THE STATE OF OHIO, APPELLEE, v. JESTER, APPELLANT.

[Cite as State *v.* Jester (1987), 32 Ohio St. 3d 147.]

(No. 85-1860—Decided August 26, 1987.)

*John T. Corrigan,* prosecuting attorney, and *Edward M. Walsh,* for appellee.

*Carla M. Tricarichi* and *Michael E. Murman,* for appellant.

*Per Curiam.* This court is required to review the facts and circumstances of appellant's conviction, as well as to independently weigh the aggravating circumstances against the mitigating factors. We must also consider the proportionality of appellant's death sentence. We affirm the judgment of the court of appeals for the reasons set forth below.

## I

In his first proposition of law, appellant asserts that he cannot be convicted of aggravated murder on the basis of specification one of count one of the indictment, because it could not reasonably be construed that he committed the offense with the purpose of escaping detection. He urges that because the shooting occurred in a crowded bank, it is not possible to find that he was seeking to avoid detection. The state counters that the bank guard was the only person who could have stopped appellant and, to prevent the guard from detecting the hidden fact of the robbery, appellant killed him.

Specification one of count one of the indictment states the "* * * offender committed the offense presented above for the purpose of escaping detection for another offense * * *." This aggravating circumstance is taken from R.C. 2929.04(A)(3) which provides that:

"The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender."

Clearly, if the specification contained "apprehension, trial, or punishment," the aggravating circumstance would have applied to the instant case. The issue is whether the specification is fatally deficient for failure to include the other circumstances.

It is difficult to agree with the state's somewhat tortured definition of "detection," which is that appellant had a hidden purpose to rob which could have been "detected" by the guard.

"Detection" is defined as "a finding out or being found out: said esp. of what tends to elude notice." Webster's New World Dictionary (2 Ed. 1982) 384. Derived from the root *detectio* (meaning an uncovering or revealing), "detection" is "[a] laying open of what was concealed; exposure; revelation; accusation." Webster's New International Dictionary of the English Language (2 Ed. 1956) 710.

The better definition is that "de-

tection" anticipates a situation where the witness or witnesses are killed in an attempt to hide the commission of the crime. For example, in *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, the defendant had shot the husband. Believing that he had killed the husband, Stumpf then killed the wife, the only witness besides defendant and his co-defendant, to avoid detection.

Crim. R. 7(B) states that an indictment may be "* * * in any words sufficient to give the accused notice of all the elements of the offense * * *. Error in the designation or its omission shall not be ground for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not mislead the defendant to his prejudice." See, also, R.C. 2941.05 and 2941.08.

Crim. R. 7 mirrors general Ohio case law. In *State* v. *Toney* (1909), 81 Ohio St. 130, 90 N.E. 142, it was held that an indictment which apprised a party of the charge against him so that he might know from the language of the indictment what he was expected to meet alleged sufficient matter to indicate the crime and was not void for uncertainty. See, also, *State* v. *Oliver* (1972), 32 Ohio St. 2d 109, 61 O.O. 2d 371, 290 N.E. 2d 828, syllabus.

In *Harris* v. *State* (1932), 125 Ohio St. 257, 181 N.E. 104, it was held in paragraph four of the syllabus that if a vital and material element identifying the offense was omitted from the indictment, it was insufficient to charge an offense and could not be cured by a court. Failure to allow a defendant to know what was necessary for his defense was reversible error. *State* v. *Fowler* (1963), 174 Ohio St. 362, 22 O.O. 2d 416, 189 N.E. 2d 133.

Here, the state chose to charge appellant in the first specification with the aggravating circumstance of committing an aggravated murder for the purpose of escaping detection. The more applicable terms of apprehension, trial, or punishment did not appear in the indictment.

The court of appeals reasoned that the four alternatives of detection, apprehension, trial, or punishment were "elucidations of the legislative concept of *accountability*." (Emphasis *sic*.) The court relied on the Committee Comment to R.C. 2929.04(A)(3). However, the committee observation is not included within the statute. Further, the statute uses "or" rather than "and," indicating that the four terms, while related, are separate concepts.

Even if this proposition of law were sustained, such would not reverse appellant's underlying conviction because the aggravating circumstance of R.C. 2929.04(A)(7) remains. Appellant urges that if the "detection" specification is dismissed, then the verdict is fatally flawed for the reason that the jury might not have convicted appellant on the basis of the single specification. However, if this court were to conclude that the first specification was legally sufficient, then it would be merged with the felony-murder specification as duplicative because the circumstances arise from the same act. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, paragraph five of the syllabus. Thus, there would be only one specification in any event.

Appellant's first proposition of law is overruled.

## II

In his second proposition of law, appellant urges that it was error for the trial court to admit evidence of a prior aggravated robbery committed while he was a juvenile for the purpose of proving prior criminal conviction where appellant did not rely on the mitigating factor of lack of a significant history of prior criminal convic-

tions and delinquency adjudications. Apparently, it is appellant's position that a jury can be denied information regarding prior criminal convictions where the issue is not raised by a capital defendant.

This court need not reach this issue, however, because appellant stipulated to the juvenile conviction. Thus, the information was transmitted to the jury with appellant's express approval. Accordingly, it was not error for the trial court to mention lack of a significant history of prior criminal convictions and delinquency adjudications, pursuant to R.C. 2929.04(B)(5), to the jury in the instructions.

Appellant's second proposition of law is overruled.

### III

Appellant, in his third proposition of law, asserts that the trial court insufficiently instructed the jury on the purpose of mitigating factors, and that the trial court failed to instruct the jury on its option to recommend a life sentence despite the existence of aggravating circumstances.

The trial judge instructed the jury that:

"Mitigating factors are factors that, while they do not justify or excuse the crime of aggravated murder, nevertheless may be considered by you as extenuating, lessening, weakening, excusing to some extent, or reducing the degree of the defendant's blame."

The trial court therefore did describe the mitigating factors and their effect. Further, appellant failed to object to the jury instruction, and the failure to object constitutes a waiver of any alleged error that may have resulted. *State* v. *Underwood* (1983), 3 Ohio St. 3d 12, 3 OBR 360, 444 N.E. 2d 1332, syllabus; *State* v. *Fanning* (1982), 1 Ohio St. 3d 19, 21, 1 OBR 57, 59, 437 N.E. 2d 583, 585; *State* v. *Scott* (1986), 26 Ohio St. 3d 92,

100, 26 OBR 79, 85-86, 497 N.E. 2d 55, 62. See, also, *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83, 54 O.O. 2d 222, 267 N.E. 2d 291, paragraph one of the syllabus; *State* v. *Morris* (1975), 42 Ohio St. 2d 307, 71 O.O. 2d 294, 329 N.E. 2d 85, paragraph one of the syllabus.

Further, appellant cannot claim that the trial court's instruction was plain error, inasmuch as he cannot demonstrate that but for the error, the outcome of the trial would have been different. *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804.

Appellant also claims that the trial court must instruct the jury that it has the "option" to recommend against the death penalty. However, the trial court clearly instructed the jury no fewer than four times that they must find the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt before they could impose the death penalty. This instruction was correct and was the charge to which appellant was entitled.

Appellant's third proposition of law is overruled.

### IV

In his fourth proposition of law, appellant urges that the trial court erred in its instructions to the jury when it expanded upon the definition of reasonable doubt beyond that provided in R.C. 2901.05(D).

The trial court instructed the jury as follows:

"Now then, what is reasonable doubt?

"The legislature of the state of Ohio defined 'reasonable doubt' as follows:

"'Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of the charge.

" 'Reasonable doubt is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.

" 'Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.'

"Reasonable doubt is an honest doubt existing in the mind of an impartial and diligent juror, after a full and fair consideration of all the evidence, with a sincere purpose to ascertain the truth, irrespective of the consequences which may result from the verdict.

"It is not a mere trivial or speculative doubt, nor is it a doubt voluntarily excited in the mind, in order to avoid a rendition of a disagreeable verdict. It is not a doubt created by any feeling of sympathy, passion, or prejudice, or by opinion or expediency. Reasonable doubt is a doubt based upon the evidence or the lack of the evidence, and the law as the Court now gives it to you.

"You are bound to follow the instructions of the Court as to all matters, and you should not permit yourselves to create in your minds any doubt that may arise from any feeling which you may have with respect to any feature of this case, which is not founded upon the evidence, or, the lack of evidence, and, the law as the Court gives it to you. Such a doubt would be considered in the law merely a capricious and unreasonable one.

"To acquit or convict upon trivial supposition or remote conjecture is a violation of your oath and an offense of great magnitude against the interest of society, directly tending to the disregard of the obligation of your juror's oath and countenancing a subversion of justice and the encouragement of malefactors."

A similar charge was given in *State v. Sargent* (1975), 41 Ohio St. 2d 85, 70 O.O. 2d 169, 322 N.E. 2d 634. This court, in paragraph two of the syllabus, held that a trial court's charge to the jury which amplifies the statutory definition of reasonable doubt must be erroneous and prejudicial to the complaining party before the judgment of the trial court will be disturbed. Accord *State v. Scott, supra,* at 100, 26 OBR at 86, 497 N.E. 2d at 62. This court specifically rejected previously rulings that *any* amplification of the statutory definition of reasonable doubt was *per se* prejudicial error. *Sargent* at 91, 70 O.O. 2d at 172, 322 N.E. 2d at 639.

As noted above, the charge here was similar to the charge in *Sargent* except that the trial court here did not include the portions of the *Sargent* charge determined to be objectionable.

Appellant has failed to demonstrate any prejudice and this proposition of law is rejected.

## V

Appellant argues, in his fifth proposition of law, that "[t]he act which caused the death of the bank guard was completed before the commission or attempted commission of the aggravated robbery, therefore the evidence was not sufficient to establish the offense of aggravated murder while attempting to commit aggravated robbery."

This proposition is utterly without merit. According to appellant's own facts, appellant shot the guard because he believed the guard was calling the police. The shooting of the guard was in furtherance of his act of robbery or attempted robbery.

R.C. 2923.02(A) provides that no person shall engage in conduct which, if successful, would constitute or result

in the offense. In *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 2 O.O. 3d 289, 357 N.E. 2d 1059, this court, in paragraph one of the syllabus, held that "[a] 'criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose."

Here, appellant took a substantial step in the course of conduct planned to culminate in an aggravated robbery by killing the guard, a person capable of stopping him. His conduct was strongly corroborative of his criminal purpose.

Ohio has also held that where one starts to carry out the purpose to commit a robbery and kills another under circumstances closely connected with the crime undertaken, the killing is part of the *res gestae* of the robbery. *Conrad* v. *State* (1906), 75 Ohio St. 52, 78 N.E. 957; *State* v. *Habig* (1922), 106 Ohio St. 151, 140 N.E. 195. See, also, Annotation, What Constitutes Termination of Felony for Purpose of Felony-Murder Rule (1974), 58 A.L.R. 3d 851.

Here, appellant was in the bank with the express purpose of committing aggravated robbery. Inasmuch as the appellant shot the bank guard because he believed the guard was summoning the police, the act of shooting the guard was closely connected with the crime of aggravated robbery.

## VI

Appellant asserts as his sixth proposition of law that the evidence of intent presented at trial was both circumstantial and insufficient. He urges that his presentation of a reasonable theory of innocence precluded the jury from finding that he purposely caused the death of another.

This court has previously held that, where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill. *State* v. *Clark* (1978), 55 Ohio St. 2d 257, 9 O.O. 3d 257, 379 N.E. 2d 597, syllabus; *State* v. *Johnson* (1978), 56 Ohio St. 2d 35, 10 O.O. 3d 78, 381 N.E. 2d 637.

The above-stated principle renders *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897, inapplicable because the state presented more than just circumstantial evidence.

*Connecticut* v. *Johnson* (1983), 460 U.S. 73, cited by appellant, is also inapplicable to the instant case. In that case, the Connecticut Supreme Court reversed the conviction on the basis that the trial court instructed the jury that "* * * every person is conclusively presumed to intend the natural and necessary consequences of his act." *Id.* at 78. The plurality affirmed the reversal, stating that the effect of this charge was to direct a verdict for the state.

Here, the state court gave no jury instruction concerning a conclusive presumption. The jury was permitted, in conjunction with all the other evidence presented, to conclude that appellant intended to kill the victim. *Clark, supra,* and *Johnson, supra.* Further, the opinion in *Connecticut* v. *Johnson* was only a plurality opinion. The fifth vote was dispositional only to allow the state court decision to stand (in lieu of dismissal of certiorari). As Chief Justice Burger noted, the court did not adopt a rule of automatic reversal. 460 U.S. at 90.

There was sufficient evidence in-

troduced from which the jury could conclude that appellant purposefully caused the death of the victim. This proposition of law is overruled.

### VII

In his seventh proposition of law, appellant argues that the trial court considered nonstatutory aggravating circumstances and improperly weighed them against the mitigating factors.

The trial court's opinion discussed a variety of factors, including appellant's credibility, use of hollow-point bullets, prior plans to rob a jewelry store (in which he stated he might have to "pop" a guard unless he had help), and whether he intended to cause the guard's death. While these were listed under the heading of "AGGRAVATING CIRCUMSTANCES," it is clear that the trial court understood the difference between statutory aggravating circumstances and other facts describing the nature and circumstances of the offense. For example, the trial court separately identified the aggravating circumstances in its discussion.

Discussion of circumstances other than statutory aggravating circumstances is not *per se* error. Juries and judges must consider the nature and circumstances of the offense, as well as the statutory aggravating circumstances, in determining whether the death penalty is appropriate. Only in this fashion is it possible to prevent a rigid and mechanistic sentencing scheme. *Barclay* v. *Florida* (1983), 463 U.S. 939.

However, as noted above, the trial court correctly identified the aggravating circumstances. In weighing the aggravating circumstances against the mitigating factors, the trial court considered the nature and circumstances of the offense as well as commenting upon the credibility of appellant's witnesses and assertions.

This does not constitute reversible error.

Appellant's seventh proposition of law is without merit.

### VIII

Appellant, as in his eighth proposition of law, challenges the death qualification of jurors at voir-dire proceedings. This proposition of law is overruled on the authority of *State* v. *Jenkins, supra,* paragraph two of the syllabus. See, also, *Lockhart* v. *McCree* (1986), 476 U.S. ____, 90 L. Ed. 2d 137.

### IX

In his ninth proposition of law, appellant urges that the trial court violated his right of confrontation by allowing prior testimony of a witness to be introduced at the re-trial.

Anthony Buckner was a witness at appellant's first trial. He testified that he saw appellant in the morning hours after the robbery with about $300. Buckner saw him again that night and borrowed the gun used by appellant. Subsequently, Buckner threw the bullets away and concealed the gun at a friend's house after learning appellant was wanted for the robbery. Further, Buckner testified that appellant had previously discussed robbing a jewelry store and had said that "he [Jester] would have to go right in and pop the guard, * * * unless there was more than two or three guys in the robbery." Buckner was not cross-examined.

At appellant's second trial, Buckner refused to testify. After lengthy discussion, he was cited for contempt by the trial court. He was declared unavailable for testimony and the transcript of his prior testimony was read to the jury.

Evid. R. 804(A)(2) defines the hearsay exception of "unavailability as a witness" as a situation in which a

declarant persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so. Evid. R. 804(B)(1) specifically excepts former testimony from the hearsay rule. In examining the interaction of this hearsay exception with a defendant's right of confrontation, we have held that prior recorded testimony may be introduced if a two-part test is followed. First, the witness must be shown to be unavailable, and there must also be shown a good faith effort to secure the witness' presence at trial. Second, there must have been an opportunity for cross-examination and there must be present adequate indicia of reliability such that a statement may be placed before the jury though there is no confrontation of the declarant. *State* v. *Madison* (1980), 64 Ohio St. 2d 322, 18 O.O. 3d 491, 415 N.E. 2d 272, syllabus; *State* v. *Keairns* (1984), 9 Ohio St. 3d 228, 9 OBR 569, 460 N.E. 2d 245, paragraph two of the syllabus. See, also, *Ohio* v. *Roberts* (1980), 448 U.S. 56.

Here, the witness was shown to be unavailable, inasmuch as he was cited for contempt after repeatedly refusing to testify. Therefore, the first part of the test has been satisfied.

At the first trial, appellant had the opportunity to cross-examine Buckner and declined. Further, appellant objected to various questions posed by the prosecutor at the first trial. The jury at the second trial was informed that Buckner was to be granted immunity from prosecution for his testimony. Thus, there was an opportunity to cross-examine Buckner and there existed sufficient indicia of reliability to place the prior testimony before the jury. The two-part test established in *State* v. *Madison* and *State* v. *Keairns* was satisfied.

Accordingly, appellant's ninth proposition of law is rejected.

## X

Appellant claims, in his tenth proposition of law, that the trial court violated the provisions of R.C. 2929.03(B) by improperly instructing the jury during the guilt phase of the possibility of the death penalty being imposed if appellant was found guilty. This contention is without merit.

Appellant failed to raise this issue below to the court of appeals. This court will not ordinarily consider a claim of error which was not raised and was not considered or decided by that court. *Toledo* v. *Reasonover* (1965), 5 Ohio St. 2d 22, 34 O.O. 2d 13, 213 N.E. 2d 179, paragraph two of the syllabus.

In any event, appellant's proposition of law is not well-taken. R.C. 2929.03(B) applies to the guilt phase of the bifurcated trial, directing that during such phase the jury shall not be permitted to consider a possible penalty. This provision does not apply in this context. If we adopted appellant's proposition, it would not be possible to death-qualify a jury.

Here, the trial court noted, during voir-dire proceedings, that:

"Now, in Ohio, at the present time, if a person is found guilty beyond a reasonable doubt of a crime of aggravated murder, and guilty beyond a reasonable doubt of the crime with specification, the law provides for the possibility of the death penalty."

This statement was made by way of preparing the jury for the death-qualification process. The jury received no "instruction" regarding the possible penalty which might be the consequence of a guilty or not guilty verdict on any charge or specification.

## XI

It remains for this court to independently weigh the aggravating circumstances against the mitigating

factors and conduct a proportionality evaluation.

The victim, officer Benjamin Grair, neither induced nor facilitated the offense. Appellant urges that he was under duress because he had lost his job one month earlier after missing several days of work due to a venereal disease. However, this fact does not ameliorate appellant's brutal act of violence during the course of a bank robbery. Likewise, appellant was not under any coercion or provocation.

There was no evidence that appellant could not appreciate the criminality of his conduct or that he was incapable of conforming his conduct to the law.

Appellant was twenty years old at the time he perpetrated the aggravated murder and aggravated robbery. He had one prior juvenile conviction which involved the use of a shotgun. While such a fact establishes that appellant did not have a lengthy list of prior convictions, it also tends to show that, contrary to his defense, he was somewhat familiar with firearms.

Appellant's mother testified that he was a lonely boy, deprived of a father, who often did things to try to help his family.

Appellant testified that he did not intend to cause the death of the victim and that he was sorry.

Appellant perpetrated this crime to acquire money with which to live.

He walked up to the guard and, using an especially deadly type of ammunition, shot him either because he thought the guard was summoning the police or because he knew that the guard was an obstacle. Testimony established that after stealing the money, appellant calmly left the bank, stole a car at gunpoint, and placidly drove off. He later joined friends and exhibited no signs of having committed a despicable act of aggravated murder.

Weighing this evidence as a whole, the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

Appellant's sentence is not disproportionate compared with other cases previously decided by this court where the death penalty has been imposed. The sentence is justified by the nature of appellant's heinous crime. Under the current state of the law in Ohio, the sentence of death was properly imposed upon this appellant. We therefore affirm the conviction and sentence of death in this case.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES and WRIGHT, JJ., concur.

DOUGLAS and H. BROWN, JJ., concur in judgment only.