OPINION
Defendant-appellant Fredrick A. McDonald appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of Having Weapons While Under Disability in violation of R.C. 2923.13, a felony of the fifth degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On October 18, 1999, the Stark County Grand Jury indicted appellant on one count of Having Weapons While Under Disability in violation of R.C.2923.13, a felony of the fifth degree. The indictment alleged that appellant previously, on or about May 6, 1997, had been convicted of aggravated assault in Stark County Common Pleas Case No. 1997CR0060, a felony of violence. At his arraignment on March 17, 2000, appellant entered a plea of not guilty to the charge contained in the indictment. Thereafter, a jury trial commenced on May 10, 1999. Prior to trial, the parties stipulated that appellant had a prior conviction for aggravated assault and was under disability on the date in question. Subsequently, the following evidence was adduced at trial. On June 13, 1999, at approximately 1:50 a.m., Patrolman James Hilles of the Alliance Police Department received a call regarding the Level 2 Nightclub. When the patrolman arrived on the scene, he found "a group of about 75 to 100 people out in front of the bar and on the street, that people were running around, pushing and shoving." Trial Transcript at 130. At trial, Patrolman Hilles testified that several individuals who came up to his cruiser were "very excited" and "were upset about something." Id. According to the patrolman, Fred Stovall, one of the individuals, "stated that a black male wearing blue shorts and no shirt, having a dreadlock hairdo come down to the bar, and he was shooting at the bar, people at the bar, and that he had ran up the street toward Liberty, toward Bushwig's house." Trial Transcript at 133-134. Scott McDonald, appellant's brother, is also known as Bushwig. After exiting his cruiser and retrieving his shotgun, Patrolman Hilles began walking up the street towards Bushwig's house. As he was approaching the house, the patrolman saw an individual with dreadlocks exit the house wearing blue shorts and no shirt. The individual, who the patrolman identified as appellant, then began walking down an alley. When Patrolman Hilles told appellant to stop because he needed to talk to appellant, appellant started screaming profanity at the officer. After appellant was arrested and being transported to jail, Patrolman Hilles returned to the scene of the shooting and spoke with the witnesses. A .38 caliber spent shell casing was found at the scene. In addition, a gun was found on the street approximately 15 to 20 feet away from the bar. At trial, Terrence Crockett, a witness to the shooting, also testified. Crockett testified that, on June 13, 1999, a fight broke out in the Level 2 Nightclub. According to Crockett, during the fight, appellant jumped up on top of the bar and began kicking beer bottles and glasses and yelling while pointing his finger at Crockett. Crockett testified that he pushed appellant off of the bar and then followed appellant outside. After chasing appellant up the street for a short distance, Crockett returned to the bar. Subsequently, while Crockett was leaning against a car parked outside of the bar, he saw appellant and a group of men coming down the street. Crockett, who testified that he saw appellant with a chrome gun that "looked more like a 380," testified that he saw appellant fire the gun into the ground a total of three times. Trial Transcript at 213. Fred Stovall, whose house is located near the Level 2 Nightclub, also witnessed the incident of June 13, 1999. Due to Stovall's unavailability, Stovall's previous trial testimony from Alliance Municipal Court was read into the record. Stovall testified that, on June 13, 1999, he was going to his bedroom when he heard arguing. When Stovall opened his front door, he saw "Bushwig" pushing a man with dreadlocks up the street. Stovall, who later learned that the man's name was Fredrick, identified appellant as such man. According to Stovall, appellant than began pushing back in the direction of the nightclub. Shortly thereafter, Stovall saw appellant fire three shots. One of the shots, Stovall testified, was fired toward the crowd. At the conclusion of the evidence and the end of deliberations, the jury, on May 11, 2000, returned with a verdict finding appellant guilty of the offense of Having Weapons While Under Disability. Thereafter, as memorialized in a Judgment Entry filed on May 17, 2000, the trial court sentenced appellant to twelve months in prison. It is from his conviction and sentence that appellant prosecutes his appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED BY FINDING THE STATE'S WITNESS TO BE UNAVAILABLE AND PERMITTING THE TRANSCRIPT OF HIS TESTIMONY AT ANOTHER TRIAL TO BE READ INTO EVIDENCE.
 II. APPELLANT'S CONVICTION FOR HAVING WEAPONS WHILE UNDER DISABILITY WAS AGAIST [SIC] THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE WITHOUT COMPLYING WITH THE STATUTORY CRITERIA OR MAKING THE REQUISITE FINDINGS.
 I
Appellant, in his first assignment of error, argues that the trial court erred by finding Fred Stovall, the State's witness, unavailable and permitting the transcript of his testimony in a prior trial in the Alliance Municipal Court to be read into evidence. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Evid.R. 804(A)(5) provides, in pertinent part: (A) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant:
* * *
 (5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance . . . by process or other reasonable means.
Evid.R. 804(B)(1) specifically excepts former testimony from the hearsay rule if the declarant is demonstrated to be unavailable under the above rule. Interpreting these Rules, the Ohio Supreme Court in State v. Jester (1987), 32 Ohio St.3d 147, 154, set forth a two part test for determining when prior recorded testimony may be introduced. First, the witness must be shown to be unavailable, and there must also be shown a good faith effort to secure the witness' presence at trial. Id. Second, there must have been an opportunity for cross-examination and there must be present adequate indicia of reliability such that a statement may be placed before the jury though there is no confrontation of the declarant. Id. See also State v. Madison (1980), 64 Ohio St.2d 322; State v. Keairns (1984), 9 Ohio St.3d 228. Appellant in the case sub judice does not dispute that Fred Stovall's prior trial testimony contains sufficient indica of reliability and that he had an opportunity to cross-examine Stovall during the trial in the Alliance Municipal Court. Rather, appellant maintains that the State failed to make reasonable and good faith efforts to secure Stovall's appearance at trial. We, however, disagree. As is evidenced by the record, the trial court conducted a hearing on the availability issue outside of the presence of the jury. At the hearing, Prosecutor Douglas Maragas testified that he left numerous messages for Stovall with Stovall's sister and on an answering machine. When the prosecutor finally spoke with Stovall on April 21, 2000, Stovall told the prosecutor that he had another telephone number and was living at another address. While, during the April 21st telephone call, Stovall voiced his displeasure at testifying, Maragas testified that Stovall told him that he would appear for the trial as required. Subsequent to such time, the prosecutor left numerous messages for Stovall both at the number Stovall had given to him and at Stovall's sister's home. Messages were left for Stovall on April 27, 2000, and on May 8, 2000. Although Maragas left both his pager number and his telephone number, Stovall never contacted Maragas. Maragas testified that he also, on May 9, 2000, attempted to contact Stovall at his place of employment. However, since he was told by the personnel office that Stovall was not working that week, Maragas left another message at Stovall's residence. In addition, at the hearing, Jerry Thomas, an investigator with the Prosecutor's Office, testified that, on the day of the trial, he went to two different addresses in Alliance in an unsuccessful attempt to locate Stovall. Thomas testified that, in addition to leaving messages at Stovall's home, he also talked to the personnel office of Stovall's employer. However, despite his efforts, Thomas was unable to ascertain Stovall's whereabouts. Based on our review of the record, we find that the prosecutor made every reasonable effort to secure Stovall's attendance at appellant's trial. As the trial court stated on the record, "Not only were there numerous phone calls made to the Defendant's [sic] residence, but there was also testimony that Detective Mucklo from the Alliance Police Department has been attempting to locate the witness. And there was testimony, of course, . . . that Jerry Thomas, the Prosecuting Attorney's investigator, has attempted to locate the witness . . ." Trial Transcript at 279. The trial court, therefore, did not abuse its discretion in finding Stovall to be unavailable and in permitting the transcript of his testimony in the Alliance Municipal Court case to be read into evidence. The trial court's decision was not arbitrary, unreasonable or unconscionable. Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in his second assignment of error, contends that his conviction for Having Weapons While Under Disability is against the manifest weight and sufficiency of the evidence. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra. at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. Appellant in the case sub judice was convicted of violating R.C. 2923.13. Such section states, in relevant part, as follows: (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
As is stated above, prior to the commencement of trial, the parties stipulated that appellant previously was convicted of aggravated assault, a felony offense of violence, in Stark County Court of Common Pleas Case No. 1997CR0060. Based on the facts as set forth in detail above, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant, while under a disability, knowingly had, used or carried a firearm. Accordingly, as a matter of law, we do not find that appellant's conviction was based upon insufficient evidence. Moreover, upon our review of the record, we cannot say that the jury, as trier of fact, clearly lost its way so as to create a manifest miscarriage of justice. While appellant points out that Terrence Crockett, one of the State's witnesses, is a four time convicted felon who had motive to lie, the jury, as trier of fact, was in a better position to assess his credibility. Clearly, the jury found him to be a credible witness. Appellant's second assignment of error is, therefore, overruled.
 III
Appellant, in his third assignment of error, argues that the trial court erred in sentencing appellant to the maximum prison term. We, however, disagree. Sentencing rests in the trial court's sound discretion. State v. O'Dell (1989), 45 Ohio St.3d 140. Pursuant to R.C.2953.08(G), our standard of review on this issue is clear and convincing evidence. R.C. 2929.14 governs basic prison terms. Subsections (C) states as follows: (C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
The trial court, in sentencing appellant to twelve months in prison, noted that appellant was on post-release control when the offense occurred. Moreover, prior to sentencing, the trial court stated as follows on the record: THE COURT: . . . As the Court was saying, even though normally there is a preference against prison on a felony in the fifth degree, that can be rebutted if the Court makes any findings, such as the fact that the Defendant has previously served a prison term. And the Court does so find as Mr. Maragas pointed out he has, the Defendant has served a prison term with respect to a prior charge of and conviction of one count of felonious assault and also with respect to one count of carrying concealed weapons. MR. MARAGAS: Your Honor, I'm sorry. I don't mean to keep interrupting you. It was aggravated assault. THE COURT: I said one count of aggravated assault. MR. MARAGAS: I'm sorry. THE COURT: And counsel one count of carrying concealed weapons. Therefore, the Court finds that anything short of a prison term would demean the seriousness of the offense and would not adequately protect the public. Additionally, the charge, as everyone knows, is one count of carrying concealed weapons. And as the Prosecutor points out, he not only — the Defendant not only was carrying a concealed weapon, but he fired it, and the testimony was such that there were perhaps 100 people in the crowd in the area. I believe we're very fortunate that no one was injured by the firing of the weapon. Nonetheless, the potential for serious injury was real, and this Court will not and cannot sanction that. Therefore, the Court is going to impose the maximum prison sentence of 12 months finding that the offender has committed the worst form of the offense. Not only was he carrying a concealed weapon, carrying a weapon, but he actually discharged the weapon into a crowd. Also, this Court finds that based upon the Defendant's criminal record and the timing of when this offense was committed, that is when the Defendant was on post release control, the Court finds that the offender poses the greatest likelihood of committing future crimes. The rate of recidivism or the chance for recidivism is high.
Trial Transcript at 388-390. Upon review, we find the record supports the trial court's findings. We further find that appellant has failed to sustain his burden of proving, by clear and convincing evidence, that the maximum sentence imposed is contrary to law. As appellee notes in its brief, the record indicates that the trial court made the requisite findings to impose the maximum sentence and such findings are supported by the record in this matter.
Appellant's third assignment of error is, therefore, overruled.
Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Reader, V.J. Farmer, P.J. and Edwards, J. concur