Robert ESKRIDGE, Petitioner–
Appellant,

v.

Khelleh KONTEH, Respondent–
Appellee.

No. 02–3680.

United States Court of Appeals,
Sixth Circuit.

Feb. 3, 2004.

Paul Mancino, Jr., Mancino, Mancino & Mancino, Cleveland, OH, for Petitioner–Appellant.

Mark Joseph Zemba, Asst. Atty. General, Office of the Attorney General of Ohio, Cleveland, OH, for Respondent–Appellee.

Before COLE and CLAY, Circuit Judges; and COLLIER, District Judge.*

CLAY, Circuit Judge.

Petitioner, Robert Eskridge, appeals from the order issued by the United States District Court for the Northern District of Ohio, entered on April 29, 2002, dismissing the petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, and appeals from the order issued by the same court, entered on May 15, 2002, denying Petitioner's Motion for a New Trial, or to Alter and Amend Judgment. For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

### Procedural History

In November of 1997, Petitioner was convicted in Ohio state court of murder and firearm offenses. The convictions were affirmed in an opinion by the Ohio Court of Appeals. *State v. Eskridge*, 1999 WL 304316 (Ohio Ct.App. May 13, 1999). On September 22, 1999, the Supreme Court of Ohio dismissed the case, *sua sponte*, with a one-sentence statement that no substantial constitutional question was raised and that a discretionary appeal was not applicable or allowed. *State v. Eskridge*, 86 Ohio St.3d 1489, 716 N.E.2d 721 (1999) (unpublished table decision). Defendant submitted an application to reopen the appeal, which the government opposed. On November 24, 1999, in a short unreported opinion, the Ohio appeals court denied Defendant's application, on grounds of *res judicata*. *State v. Eskridge*, 1999 WL 1087505 (1999). On March 1, 2000,

---

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

the Supreme Court of Ohio dismissed the case, again, *sua sponte*, on the grounds that no substantial constitutional question was raised and that a discretionary appeal was not applicable or allowed. *State v. Eskridge*, 88 Ohio St.3d 1435, 724 N.E.2d 810 (2000) (unpublished table decision).

Petitioner filed a petition for a writ of habeas corpus on May 12, 2000. The district court referred the matter to a magistrate judge, whose report and recommendation to deny relief, issued on February 28, 2002, was followed by the district court, in an April 29, 2002 Memorandum of Opinion and Order. The Memorandum Opinion and Order dealt only with the parties' objections to the Report and Recommendation of the magistrate judge. The district court overruled Respondent's objections to the magistrate judge's having ruled on all of Petitioner's claims on the merits, when allegedly certain of the claims were procedurally defaulted because they were not raised before the Ohio appeals court. The district court overruled Petitioner's numerous objections to the magistrate judge's findings. The district court denied Petitioner's request for an evidentiary hearing.

Petitioner filed a Motion for a New Trial, or to Alter and Amend Judgment. Under Fed.R.Civ.P. 52 and 59, based on alleged constitutional errors, Petitioner argued for a new trial or a change to the April 29, 2002 judgment. On May 15, 2002, in an order, the district court denied the motion.

On June 13, 2002, Petitioner filed a timely notice of appeal as to the district court's April 29, 2002 order, denying habeas relief and as to the district court's May 15, 2002 order, denying Petitioner's motion for a new trial or to alter or amend the judgment. The appeal was timely as to both orders, since it was filed within thirty days of the order denying the Motion for a New Trial, or to Alter and Amend Judgment. Fed. R.App. P. 4(a)(4)(A)(ii),(iv),(v) ("If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion: (ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment; [or] ... (iv) to alter or amend the judgment under Rule 59; [or] (v) for a new trial under Rule 59").

On January 13, 2003, this Court entered an order ruling on Petitioner's certificate of appealability: the certificate was granted as to the issues of insufficient evidence and cumulative prejudice and was denied as to the two evidentiary issues: (1) Petitioner's claim that the trial court erred in admitting evidence showing that Petitioner had sold drugs and was in jail at the time of the trial, and evidence showing that Petitioner's father shot and paralyzed Petitioner's mother; and (2) Petitioner's claim that the trial court erred in admitting a coroner's report noting that the two fatal gunshots were fired on one street. Appeal was also denied as to ineffective assistance of trial and appellate counsel.

### Substantive Facts

The facts of this case are set out in detail in the Ohio appeals court's opinion, *State v. Eskridge*, 1999 WL 304316. The pre-arrest events were as follows:

The Cleveland Police responded to a phone call about a shooting at E. 66th Street and Zoeter Avenue on Cleveland's east side on April 5, 1997, at 2:58 a.m.

When Det. Beaman arrived on the scene, he found the victim, Ernest Bremer, dead in the front seat of his car, which was in the middle of Zoeter Avenue in front of 6613 Zoeter. Later laboratory results indicated Bremer had co-

caine in his blood and urine at the time of his death. Det. Beaman found one bullet casing on E. 66th Street in front of the Meat Market and a second casing between Bremer's legs. These casings were determined to have come from the same gun. Fresh glass was also found on E. 66th Street in front of the Meat Market, in the same area as the first casing. Det. Beaman observed a bullet indentation in the car's side molding between the driver's window and the rear driver's side window. The rear driver's side window was broken out, and glass found in the car's back seat was the same type as the glass found on E. 66th Street. According to Det. Beaman, one shot was fired on E. 66th Street, a fact confirmed by Det. Moore who also testified. The gun from which these shells were fired was never found.

Det. Moore testified that on April 8 and 9, 1997, the Cleveland Police obtained arrest warrants for Kevin Hafley and defendant Eskridge on charges of aggravated murder of Bremer. On April 9, 1997, he and two other officers searched a house at 1426 East 61st Street looking for Hafley and Eskridge. The only persons located in the house at the time of the original search were an elderly couple, relatives of Mr. Hafley and his nephew, defendant Eskridge. Later the same day, the police conducted a second search of the house, when they found and arrested Eskridge.

*Id.* at *1.

At trial, the only evidence that Defendant committed the shooting was testimony of Defendant's uncle, Kevin Hafley. *Id.* at *2 ("Hafley testified on behalf of the State at Eskridge's trial. He was the only witness who identified Eskridge as being near Bremer's car or having a gun on April 5, 1997."). Hafley testified that Defendant shot and killed Bremer. *Id.* at *3. Hafley's testimony was perhaps influenced by his having made a plea bargain with

sentencing still pending, and his testimony was inconsistent with earlier statements that he had made to the police. *Id.* at **2–3

(Hafley acknowledged that he had pleaded guilty to involuntary manslaughter in connection with the death of Bremer; that he was facing one to five years; that he was told it was probationable; and that he had not been sentenced at the time of trial.... Hafley further testified Eskridge was the person who fired a gun and that Hafley heard two shots.... [H]e gave different versions as to this allegation. Hafley admitted that he lied repeatedly in his statement to the police on April 10, 1997 for the reason he did not want to get involved. Hafley made his plea bargain prior to making his second statement to the police on August 8, 1997.).

Other evidence was introduced, none of which could directly prove Defendant's guilt. Two eyewitnesses testified, one of whom, Ebony King, identified Defendant as one of a number of people near the shooting, and the other of whom, Judy Alexander, stated that there was illegal drug activity occurring on the day of the murder and that Defendant had previously been involved with such activity. *Id.* at *4. Evidence was introduced that a coroner "found gunshot residue on the back of Bremer's right and left hands and the palm of his right hand. This means that Bremer was near a gun that had been discharged. She stated that the distance between the muzzle of a discharged gun and its target will be no more than two or three feet if gunshot residue is present on the target." *Id.* at *3.

## DISCUSSION

This Court reviews a district court's decision to grant or deny a habeas writ *de novo*. *Lucas v. O'Dea,* 179 F.3d 412, 416

(6th Cir.1999) (citing *Fair v. United States,* 157 F.3d 427, 430 (6th Cir.1998)); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997).

Federal courts evaluate habeas petitions according to the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) (codified as amended at 28 U.S.C. § 2254 (Supp.2002) ("AEDPA")). *Harpster,* 128 F.3d at 326. The AEDPA's objective is "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations omitted). The statute provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), a state court's legal decision is "contrary to" clearly established federal law under 28 U.S.C. § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." 529

U.S. at 412–13; *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir.2000). An "unreasonable application" occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.

Under this standard, a state court decision is not unreasonable simply because the federal court concludes that the decision is erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12; *see also McGhee,* 229 F.3d at 510. Finally, the *Williams* Court emphasized that "clearly established Federal law, as determined by the Supreme Court" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." 529 U.S. at 412.

Petitioner presents two claims. First, Petitioner argues that cumulative error provides a basis for relief. Secondly, Petitioner argues that there was insufficient evidence to support a guilty verdict. We take these issues in order.

## I.

First, Petitioner alleges cumulative error. Among the individual errors alleged by Petitioner are evidentiary issues, the appeal of which was denied in the certificate of appealability. These alleged errors involved Petitioner's claims that the trial court erred in admitting evidence showing that Petitioner had sold drugs, evidence that Petitioner was in jail at the time of the trial, evidence showing that Petitioner's father shot his mother, and a coroner's report noting that the two fatal gunshots were fired on one street. Additionally, Petitioner raises alleged errors that were not presented as separate issues

in the application for a certificate of appealability. Petitioner challenges the jury instruction on the grounds that it diluted the specific intent requirement for murder. Petitioner objects to the prosecutor's vouching for the credibility of the main government witness, Hafley. Petitioner objects to the government's argument before the jury concerning Defendant's non-production of certain witnesses. Petitioner objects to an alleged Fifth Amendment violation, in the government's closing argument.

Cumulative error is not a basis for granting habeas relief in non-capital cases. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief. Thus, it cannot be said that the judgment of the Ohio courts is contrary to ... any ... Supreme Court decision so as to warrant relief under the AEDPA.").[1]

Nor does our review of the individual errors alleged as a part of the cumulative error claim reveal any individual issues upon which relief might properly be granted by this Court.[2] Of the errors alleged under the cumulative error claim, the claims of prosecutorial misconduct and violation of the Fifth Amendment are the only claims that could potentially warrant relief on the merits, as individual issues. Unlike the other claims raised here, these claims were not expressly denied appeal by the certificate of appealability, as individual claims, and these claims refer to federal constitutional rights as established by the Supreme Court (as required for

relief under the AEDPA). Yet, even if these two claims could be considered individually, neither would provide grounds for relief, because both claims were procedurally defaulted in state court, since they were not raised on direct appeal to the Ohio Appeals Court.

According to "the *Long* 'plain statement' rule,"

> a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case " 'clearly and expressly' " states that its judgment rests on a state procedural bar. *Caldwell[ v. Mississippi]*, 472 U.S. [320], at 327, 105 S.Ct.[2633,] at 2638, [86 L.Ed.2d 231] [(1985)] quoting [*Michigan v.] Long*, 463 U.S. [1032,] 1041, 103 S.Ct. [3469,] 3476, 77 L.Ed.2d 1201 [(1983)].

*Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Also noteworthy in this regard is this Circuit's recent decision in *Caver v. Straub:*

> This court has previously announced a four part test to determine whether a claim has been procedurally defaulted:
>> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule ... **Second, the court must decide whether the state courts actually enforced the state procedural sanction**.... Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on

---

1. Cumulative error can be the basis of habeas relief in capital cases. *E.g.*, in *DePew v. Anderson*, constitutional errors that might have been harmless, taken individually, were cumulated by this Court, leading to a reversal of a death sentence. 311 F.3d 742, 751 (6th Cir.2002) (distinguishing cases in which a death sentence was imposed from other cases).

2. Thus, we need not address the novel question of whether, in a non-capital habeas case, we could grant relief based solely upon an individual claim that was only raised before this Court as part of a larger "cumulative error" claim, where the claim was not raised separately as an independent claim.

which the state can rely to foreclose review of a federal constitutional claim ... [Fourth,] the petitioner must demonstrate under [*Wainwright v.] Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) that there was "cause" for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

349 F.3d 340, 346 (6th Cir.2003) (emphasis added) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986)).

■ In the present case, both claims at issue were first raised on appeal to the Supreme Court of Ohio. The Supreme Court of Ohio dismissed the appeal without explanation. However, a federal court may "look through" an unexplained order to the last reasoned state court judgment and presume that the Ohio Supreme Court's unexplained order rests on the same grounds as the reasoned judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 802–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991) (per curiam). The last reasoned opinion, that of the Ohio Court of Appeals, did not address the prosecutorial misconduct issue or the Fifth Amendment issue (as neither issue was raised before the court). Where a state supreme court issued an unexplained order dismissing claims that were never addressed in judgments by lower state courts, this Court may invoke an applicable state procedural bar on behalf of the state supreme court. We applied such a bar in *Simpson v.*

*Sparkman*, 94 F.3d 199, 202–03 (6th Cir. 1996), where we stated:

> Addressing the difficulty of interpreting unexplained state court orders, the Supreme Court has held that "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). However, because there are no state court decisions rejecting petitioner's due process claim, this presumption is also unavailable.

Thus, we are left to our own devices in interpreting the Kentucky Court of Appeals' denial of petitioner's request for a writ of habeas corpus. Even though the Kentucky Court of Appeals was silent as to its reasons for denying petitioner a writ of habeas corpus on his due process claim, we will not assume that the court did not observe the applicable procedural bar. Instead, we will assume that had the state court addressed petitioner's due process claim, it would not have ignored its own procedural rules and would have enforced the procedural bar. *See Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir.1993).

In the present case, although the failure to object at trial to improper prosecutorial statements does not lead to the complete default of claims,[3] there is a mandatory rule that claims not raised before the Ohio Appeals Court are defaulted.[4] Invoking

---

**3.** There is no mandatory bar to appeals, stemming from the failure to object at trial to the alleged prosecutorial misconduct and Fifth Amendment violation. Failure to object at trial could only lead to a more stringent standard of review. *State v. Coley*, 93 Ohio St.3d 253, 265, 754 N.E.2d 1129 (Ohio 2001) ("Since the defense counsel did not object to these photographs at trial, he thereby waived all but plain error.").

**4.** *State v. Issa*, 93 Ohio St.3d 49, 62, 752 N.E.2d 904 (Ohio 2001) ("Appellant failed to raise this issue below and thereby waived it. *Williams*, 51 Ohio St.2d 112, 5 Ohio Op.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus."); *State v. Sanders*, 92 Ohio St.3d 245, 262, 750 N.E.2d 90 (Ohio 2001) ("Sanders failed to raise these issues in the court of appeals. He thereby waived them."); *State v. Smith*, 89 Ohio St.3d 323, 327, 731 N.E.2d

this procedural bar, this Court would decline to rule on the merits, on these issues, even if the issues could be considered individually. There was no showing of cause and prejudice for the failure to raise these issues before the Ohio Court of Appeals, and thus the procedural bar would provide an independent and adequate state ground for denying relief for the claims of prosecutorial misconduct and violation of the Fifth Amendment.

No relief is warranted under the cumulative error claim.

## II.

█ Petitioner next argues that there was insufficient evidence to support a guilty verdict. Petitioner bears the burden of showing, by clear and convincing evidence, that the state court decided a factual issue unreasonably. 28 U.S.C. § 2254(e)(1).

Under *Jackson v. Virginia*, evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). This Court generally may not redetermine witness credibility. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74

L.Ed.2d 646 (1983). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296–97, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992).

Petitioner was convicted of murder with firearm specifications, *State v. Eskridge*, 1999 WL 304316, at *1, in violation of Ohio Rev.Code § 2903.02, which states in relevant part:

> (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03[5] or 2903.04[6] of the Revised Code.
>
> (C) Division (B) of this section does not apply to an offense that becomes a felony of the first or second degree only if the offender previously has been convicted of that offense or another specified offense.

Petitioner does not contest that if Hafley's testimony that Petitioner shot and killed Bremer was accurate, then Petitioner is guilty of the crime with which he was charged.

---

645 (Ohio 2000) ("Since Smith failed to raise this issue before the court of appeals, we consider this issue to be waived. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 Ohio Op.3d 98, 364 N.E.2d 1364, paragraph two of the syllabus."); *State v. Jester*, 32 Ohio St.3d 147, 154, 512 N.E.2d 962 (Ohio 1987) ("Appellant failed to raise this issue below to the court of appeals. This court will not ordinarily consider a claim of error which was not raised and was not considered or decided by that court. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179, paragraph two of the syllabus.").

5. In relevant part, Ohio Rev.Code § 2903.03 states:

> (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.

6. Ohio Rev.Code § 2903.04 defines the offense of involuntary manslaughter.

Hafley's testimony indicated a close-range shooting, *State v. Eskridge,* 1999 WL 304316, at *3, J.A. at 486–89, 491, 502–03, which is consistent with the coroner's finding that the shooting was at close range. *State v. Eskridge,* 1999 WL 304316, at *3. Hafley identified Petitioner as the shooter. *Id.*

Viewing the evidence in the light most favorable to the prosecution, as is appropriate in a habeas ruling on a factual issue, the district court concluded that a rational trier of fact could have found credible Hafley's identification of Eskridge as the shooter. The district court found that inconsistencies in Hafley's statements to the jury, and the problem that Hafley's motivation may have been tainted by an attempt to gain lenient sentencing on his own plea, did not provide grounds for overturning the conviction. As the magistrate judge stated, in the report to the district court, "Hafley's inconsistency and motivation were points of which the jury was well aware.[7] The jury obviously opted to favor Hafley's credibility nonetheless. Therefore even though Hafley's testimony was self-serving and conflicting on several points, overall it established Eskridge's guilt when considered with corroborating circumstantial evidence." (J.A. at 373.)

The district court's conclusion (based on the reasoning of the magistrate judge) is not wholly accurate. There was no "corroborating circumstantial evidence" probative of Defendant's having been the shooter. Neither of the government's two other witnesses identified Defendant as having been the shooter or as even having possessed a gun at the crime scene (or even as having fled from the scene). *State v. Eskridge,* 1999 WL 304316, at *3. The state appeals court made clear that Hafley's testimony was uncorroborated. *Id.* at *2 ("[Hafley] was the only witness who identified Eskridge as being near Bremer's car or having a gun on April 5, 1997.").

However, the lack of corroboration is not itself grounds for reversal. A factfinder is permitted to base a conviction on a co-defendant's self-serving and uncorroborated testimony. *United States v. Pruitt,* 156 F.3d 638, 647 (6th Cir.1998) ("Federal law permits the conviction of a defendant on the unsupported testimony of an accomplice.") (citation omitted).

The issue of Hafley's credibility nevertheless remains. The case of *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) makes clear the importance of factfinders' in-person credibility determinations, stating, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses *whose demeanor* has been observed by the state trial court, but not by them." *Id.* at 434 (emphasis added). But this statement does not categorically prevent a federal court from making any credibility assessments. Under certain circumstances, e.g., where new evidence surfaces, a federal court may reexamine witness credibility in a habeas proceeding. *Schlup v. Delo,* 513 U.S. 298, 330, 115 S.Ct. 851,

---

7. As to Hafley's self-serving motivation, the trial court gave the jury the following instruction:

Now in this case an individual known as Kevin Hafley did testify against the Defendant Robert Eskridge, and according to the evidence Kevin Hafley entered a plea bargain agreement with the State of Ohio. The testimony of Kevin Hafley does not become inadmissible because of his involvement, if any, or moral turpitude or self-interest. But the admitted or claimed involvement of a witness may affect his credibility and make his testimony subject to grave suspicion and require you to weigh such testimony with great caution. But it is for you, as jurors, in light of all the facts presented to you from the witness stand to evaluate such testimony and to determine its quality and worth or its lack of quality of worth. (J.A. at 571.)

130 L.Ed.2d 808 (1995) ("under the gateway standard we describe today, the newly presented evidence may indeed call into question the credibility of the witnesses presented at trial.").

On review, only the findings of a "rational" jury will be upheld. *Jackson v. Virginia*, 443 U.S. at 319. Thus, while the circumstances of the present case do not precisely fit the newly-presented evidence category in *Schlup*, the jury's reliance on Hafley's testimony might be found erroneous if this Court determined that nothing in the "demeanor" of the witness could possibly resolve major internal inconsistencies in the testimony–i.e., if, based on the trial transcript, this Court could say that reliance on the witness' testimony was not rational.

The Ohio appeals court opinion points to an internal inconsistency that is apparent from the transcript of Hafley's testimony:

> Hafley ... testified Eskridge was the person who fired a gun and that Hafley heard two shots. Again, he gave different versions as to this allegation. On direct examination, Hafley stated that he was in the front passenger seat, heard a shot, and that the glass broke on the back driver's side of Bremer's car. He said he turned around, saw his nephew on the driver's side holding a gun, and then heard another shot. Hafley testified that after the second shot he "took off running." Later, during his direct testimony, Hafley said he was running and "I looked and I seen him shooting a guy." On cross-examination, Hafley testified " * * * I am laying like this and I heard a pow, pow * * * I got

out of the car and turned around and I seen my nephew."

*State v. Eskridge*, 1999 WL 304316, at *3.

Yet the inconsistency in Hafley's testimony as to whether Hafley was running or in the car at the time of the shooting does not appear to render the testimony so flawed that no rational jury could believe Hafley's identification of the shooter. Hafley testified that he had been involved in a struggle with the victim, Bremer, in which Hafley was holding onto the gearshift in the manual-transmission automobile. It would have been rational for the jury to find that the heated, dangerous struggle for the gearshift,[8] combined with traumatic nature of the shooting, might have made certain specifics of the incident difficult for Hafley to recall—but a rational jury could still have believed Hafley's identification of the shooter. The testimony appears to have been consistent on how the shooting occurred—Defendant approached Bremer, who was in the driver's seat of the automobile, and shot Bremer at close range. Because Hafley's testimony was consistent as to the shooting, it would not have been irrational for the jury to have inferred that despite the inconsistencies as to Hafley's precise location and behavior at the time of the shooting, Hafley witnessed Defendant shoot Bremer.

In a habeas proceeding, 28 U.S.C. § 2254(d)(2) of the AEDPA clearly provides for federal review of a state court's factfinding. Yet the AEDPA's objective is "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 693 (citations omitted). Petitioner was convicted on the basis of the self-serving, uncorroborated

---

8. On cross-examination, Hafley was asked, "And you are hanging on [to the gearshift], holding on for dear life, you were dragged and were afraid to be run over by the car, right, if you fell out of the car?" Hafley responded, "Fell out or getting hurt, period." (J.A. at 500) (trial transcript).

testimony of Hafley, which contained internal inconsistencies. But the fact that testimony was self-serving and uncorroborated does not in itself render it insufficient to support a conviction, and the inconsistencies in Hafley's testimony were not enough to make it irrational for a jury to believe Hafley's testimony that Defendant shot Bremer. Accordingly, Petitioner's sufficiency of the evidence claim does not establish grounds for relief.

## CONCLUSION

Based on the foregoing, we **AFFIRM** the judgment of the district court.