[Cite as *State v. Dorsey*, 2015-Ohio-4659.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : | Case No. 2014CA00217 |
|  | : |  |
| LADERRIUS DUSHON DORSEY | : |  |
|  | : | O P I N I O N |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No.
                             2014CR1613

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      November 9, 2015

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN FERRERO                          EARLE E. WISE, JR.
STARK COUNTY PROSECUTOR               122 Central Plaza North
BY: RENEE WATSON                      Canton, OH 44702
110 Central Plaza S.
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant, Laderrius Dushon Dorsey ["Dorsey"] appeals from his convictions and sentences after a jury trial in the Stark County Court of Common Pleas for felonious assault, with an attendant firearm specification, having weapons while under disability, and a repeat violent offender specification.

*Facts and Procedural History*

{¶2} Dorsey was originally indicted in Stark County Common Pleas Court case number 2014CR0972 on June 22, 2014. Dorsey was charged with one count of aggravated robbery pursuant to R.C. 2911.01(A)(1) and/or R.0 2911.01(A)(3) and one count of felonious assault pursuant to R.C. 2903.11(A)(1) and/or R.C. 2903.11(A)(2). A later superseding indictment added a repeat violent offender specification pursuant to R. C. 2941.149, gun specifications pursuant to R.C. 2941.141 and one count of having weapons under disability pursuant to R.C. 2941.149. On August 15, 2014, Dorsey was charged with robbery in an unrelated case. *State v. Dorsey,* Stark County Court of Common Pleas No. 2014CR1298A.

{¶3} On September 2, 2014, a key witness for the state unexpectedly went into labor. When the trial court was unwilling to grant a continuance and Dorsey was unwilling to sign a time waiver, the state dismissed the charges with the understanding that it would be re-filed as soon as the witness was available. This case was later dismissed by the state. Identical charges were re-filed in Case Number 2014CR1613 on October 9, 2014 and trial began on October 14, 2014. Dorsey waived his right to a jury trial as to the charge of having weapons under disability and the repeat violent

offender specification, electing to have the court decide those matters. The case proceeded to trial under the later case number.

{¶4}  On April 1, 2014, around 2:00 p.m. Thomas Whatley was walking toward downtown Canton. On Jones Court, he happened upon Dorsey. Whatley has known Dorsey since 2009, but Dorsey was known to Whatley only as "Bird." Davon Wallace and Stephanie Dailey were also present.

{¶5}  As Whatley approached, the group was gathered around a black car that Whatley did not recognize. Whatley stopped to talk, but then Dorsey told Whatley he needed Whatley's money. Dorsey tried to get his hands in Whatley's pants pocket. When Whatley struggled, Dorsey pulled out a gun and shot Whatley in the leg. Dorsey dropped the gun and Whatley fled. Dorsey recovered the weapon and ran after Whatley. Whatley testified that he was convicted of Felonious Assault and Robbery in 2009 and went to prison. He is currently on post-release control. Whatley admitted that because he was on PRC he could not own or have a firearm.

{¶6}  Kimberly Poole was on her front porch when she heard a loud pop. She looked in the direction of the sound to see a man running up the alley followed by another man wielding a gun. The first man kicked his way into an abandoned house to escape the man with the gun. The man with the gun noticed Poole, looked at her, smiled, "tucked the gun back in," and then ran back down the alley. Moments later a black car came out of the alley. The car's windows were tinted so Poole could not see if the gunman was in the car. The man who had hid in the house reemerged and began screaming he had been shot. Poole's uncle called police.

{¶7} Canton Police Officer Terry Monter responded to the scene along with Sergeant Prince. They spoke briefly with Whatley while the medics were working on him, and then spoke with Poole. She described the gunman as a black male in a white t-shirt with a "low haircut". She also described the car and was able to recall a few numbers off the license plate. When shown a photograph of the suspect vehicle to identify she said it was not the vehicle that she saw. 1T. at 100. When shown a second photograph of the same vehicle she does identify it as the car, "now that I see the taillight." Id.

{¶8} Poole was not asked by the police to identify Dorsey as the man she had seen wielding a gun. The state did not ask Poole during trial if she could identify Dorsey as the man with the gun that she had seen chasing Whatley.

{¶9} Officers were aware of the vehicle and that Wallace owned it. It had been photographed in the past. Officers showed a photo of the vehicle to Poole and she confirmed that was the car she saw coming out of the alley.

{¶10} Officer Monter learned the suspect was known as Bird. He was aware of an individual associated with the Shorb Block gang who went by the name "Bird." He obtained a photo of the person he knew as Bird to show Whatley and Whatley identified Bird, aka Dorsey as the shooter. Officer Monter testified that the U.S. Marshals and FBI Task Force who the police use to locate fugitives later arrested Appellant in Atlanta, Georgia. 1T. at 164. When he was arrested in Georgia the Form 8 list Dorsey's residence as Marietta, Georgia.

{¶11} Davon Wallace testified for the state at trial. Although he was a mostly uncooperative witness — claiming he was "on pills" and remembered nothing from the day in question — he nonetheless placed himself, his car, and Dorsey at the scene.

{¶12} The jury found Dorsey guilty of felonious assault and the accompanying firearm specification, but acquitted him of robbery and the firearm specification. The trial court found Dorsey guilty of the repeat violent offender specification and having weapons under disability.

{¶13} Dorsey was later sentenced to 8 years for felonious assault, 3 years for the gun specification, 3 years for having weapons under disability, 10 years for the repeat violent offender specification and the balance of his post release control time - 765 days. Dorsey was ordered to serve the sentences consecutively for an aggregate total of 24 years plus 765 days.

*Assignments of Error*

{¶14} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY VIOLATING HIS RIGHT TO A SPEEDY TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTIONS AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AS WELL AS OHIO REVISED CODE SECTIONS 2945.71 TO 2945.73.

{¶15} "II. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AS A RESULT OF PROSECUTORIAL MISCONDUCT WHEN THE PROSECUTOR IMPROPERLY COMMENTED ON:

{¶16} I)      APPELLANT'S PRIOR PRISON SENTENCE IN OPENING STATEMENT;

{¶17} 2) UNSUBSTANTIATED EVIDENCE OF FLIGHT BY APPELLANT; AND

{¶18} 3) APPELLANT'S RIGHT TO REMAIN SILENT.

{¶19} "III. THE TRIAL COURT ERRED TO THE PRDJUDICE(SIC) OF THE APPELLANT WHEN IT FAILED TO PROPERLY INSTRUCT THE JURY: 1) AS TO A FLIGHT INSTRUCTION WHERE THERE WAS A STATEMENT ABOUT APPELLANT'S ALLEGED FLIGHT; AND 2) AS TO AN INSTRUCTION AS TO DISREGARD A STATEMENT ABOUT APPELLANT SERVING TIME IN PRISON.

{¶20} "IV. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN TILE CONVICTIONS AND THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIENCE (SIC).

{¶21} "V. THE APPELLANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10, ARTICLE I, OF THE OHIO CONSTITUTION.

{¶22} "VI. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT BY FAILING TO PREVENT CUMMULATIVE ERROR, WHICH PREVENTED APPELLANT FROM RECEIVING A FAIR TRIAL."

I.

{¶23} In his first assignment of error, Dorsey contends the trial court erred and violated his statutory and constitutional rights by denying him a speedy trial.

{¶24} The right to a speedy public trial is established in the Ohio Constitution, Article I, Section 10. "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the

accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and *a speedy public trial* by an impartial jury of the county in which the offense is alleged to have been committed * * *." (Emphasis added.) *See, State v. MacDonald*, 48 Ohio St. 2d 66, 68, 357 N.E.2d 40, 42(1976).

{¶25} R.C. 2945.71 codifies a defendant's right to a speedy trial and provides the time within which a hearing or trial must be held for specific offenses.

{¶26} A person charged with a felony shall be brought to trial within 270 days after the person's arrest or the service of summons. R.C. 2945.71(C)(2). A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged. R.C. 2945.71(D). Each day an accused is held in jail shall be counted as 3 days. R.C. 2945.71(E).

{¶27} "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." R.C. 2945.73(B). "[S]uch discharge is a bar to any further criminal proceedings against him based on the same conduct." R.C. 2945.73(D).

{¶28} R.C. 2945.72 provides for a tolling of the time limitations under certain circumstances,

The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

(F) Any period of delay necessitated by a removal or change of venue pursuant to law;

(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.

{¶29} A speedy-trial claim involves a mixed question of law and fact. *State v. Larkin,* 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. Id. When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709(1996).

{¶30} In the case at bar, Dorsey was arrested in Georgia.  He was returned to Ohio on June 9, 2014. The first day is excluded from the count. *State v. Adkins*, 4 Ohio App.3d 231, 232, N.R2d 1314 (3rd Dist 1982), Crim.R. 45 and R.C. 1.14. The speedy trial clock in this matter therefore began on June 10, 2014. R.C. 2945.72(A); *State v. Bass,* 5th Dist. Stark No. 1995 CA 00347, 1997 WL 116971(Jan. 17, 1997).

{¶31} On August 15, 2014, Dorsey was indicted in Stark County Court of Common Pleas, Case No. 2014CR1298A on one count of robbery, a felony of the

second degree for an incident that occurred while the charges in the case bar were pending. The Ohio Supreme Court has held that the triple count provision only applies when the person is being held in jail in lieu of bail solely on the pending case. *State v. McDonald*, 48 Ohio St.2d 66, 357 N.E.2d 40(1976), paragraph one of the syllabus. *Accord, State v. Ladd,* 56 Ohio St.2d 197, 383 N.E.2d 579(1978)("The fact that in *MacDonald* one charge was federal and the other state, whereas here both charges were by the state, does not justify our deviating from the rule at this time." 56 Ohio St.2d at 203, 383 N.E.2d 40).

**{¶32}** Thus, the time calculation is:

June 10, 2014 to August 15, 2014          67 days x 3 = 201 days

August 15, 2014 to October 14, 2014     61 days

201 days + 61 days = 262 days

**{¶33}** Accordingly, Dorsey was tried within the 270-day requirement set forth in R.C. 2945.71(C)(2).

**{¶34}** Dorsey's first assignment of error is overruled.

II.

**{¶35}** In his second assignment of error, Dorsey contends the prosecutor committed misconduct by commenting on Dorsey's prior incarceration, his flight from the jurisdiction and his right to remain silent.

**{¶36}** Dorsey failed to object; accordingly, he has waived all but plain error. *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 109. To prevail on plain-error review, Dorsey must establish both that misconduct occurred and that but for the misconduct, the outcome of the trial clearly would have been otherwise.

*Pickens*, *citing State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); Crim.R. 52(B).

**{¶37}** The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). *Accord, State v. Pickens*, 141 Ohio St.3d at ¶110, 2014-Ohio-5445, 25 N.E.3d 1023.

*1. Prior criminal history*

**{¶38}** Dorsey first complains that the state in opening statement informed the jury that Dorsey had met Whatley in prison, specifically,

> Thomas [Whatley] and [Dorsey] - - well, there is really no better way to put it, they knew each other. Well, they knew each other from the institution.

1T. at 84. A similar comment is later repeated by the prosecutor,

> The person known as Laderrius Dorsey would have been together in an institution with Thomas Whatley at the time described.
>
> * * *
>
> They pull out a photograph of Laderrius Dorsey. They show that to Thomas Whatley, and he says, Yeah, that's the guy. That's the guy I knew from before.

1T. at 87.

{¶39} In the case at bar, Dorsey informed the state and the trial court prior to the start of the jury trial that he would have the having weapons while under disability charge and the repeat violent offender specification tried to the court. 1T. at 7-10. Further, Dorsey's trial counsel informed the trial court and the prosecutor that Dorsey would not testify. 1T. at 10. Thus, the prosecutor's statements were improper in that they placed before the jury Dorsey's prior bad acts. No reason is given as to why the prosecutor had to mention "the institution" rather than simply stating the pair were acquaintances. The fact that Dorsey had been in prison served no legitimate purpose beyond suggesting to the jury that Dorsey had a criminal record and had been to prison just like the victim Thomas Whatley.

{¶40} In the case at bar, we find that, although of doubtful relevance, those relatively minor statements could not have prejudiced defendant and were harmless error. *State v. Gumm,* 73 Ohio St.3d 413, 426, 653 N.E.2d 253, 266(1995).

{¶41} Dorsey further claims Detective Monter testified he knew Dorsey, aka Bird, as a member of the Shorb Block Gang. 1T. at 160-161.

*2. Gang affiliation*

{¶42} Trial courts must treat evidence of gang affiliation with care since most jurors are likely to look unfavorably upon a defendant's membership in a street gang. *See United States v. Jobson*, 102 F.3d 214, 219 n. 4 (6th Cir.1996). Evidence of gang affiliation has been held admissible to establish the defendant's opportunity to commit a crime. *Jobson* 102 F.3d at 221, or where the interrelationship between people is a central issue in the case, *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir.1999), subject to balancing the probative value of such evidence against its prejudicial effect

pursuant to Rule 403 of the Federal Rules of Evidence. See *Jobson*, 102 F.3d at 221–23.

**{¶43}** Testimony that Detective Monter and his partner normally work gang cases and that the area is known for its gang violence served primarily as permissible background evidence. 1T. at 156.

**{¶44}** However, testimony was further elicited concerning gang members,

> Myself and Sergeant Prince had just recently taken photographs of that vehicle. We were aware of that vehicle belonging to members of the Shorb Block Gang, and we immediately showed the victim [sic.] photos that we had just got from that vehicle. She stated a hundred percent that that was the vehicle in question. We knew that vehicle to be owned by Devon Wallace.

1T. at 160. This testimony did not implicate Dorsey. Defense counsel may not have objected as a strategic choice to cast suspicion upon Wallace, or discredit his testimony at trial.

**{¶45}** More troubling is the testimony directly suggesting that Dorsey is a gang member,

> I was aware of an individual who associated with Shorb Block by the name of Bird. I had dealt with the other situations that had come across my desk with that name.
>
> So at that point I went to headquarters. I identified who Bird was, got a photograph of him, went to Mercy Hospital, met with the victim, spoke to him briefly, did a taped statement, showed him a picture of

Laderrius Dorsey, who I knew as Bird, member of Shorb Block, and he

identified him as the shooter and the person who robbed him that day.

1T. at 161. No attempt was made by the state to show that the gang affiliation was central to Dorsey's opportunity or motive to commit the crime. Nothing about the suggested gang affiliation provided direct or even circumstantial evidence that Dorsey committed the crimes charged. A defendant's membership in a gang is inadmissible to prove that defendant had a propensity to commit crime. *State v. Robb* (2000), 88 Ohio St.3d 59, 69.

**{¶46}** In the case at bar, we find that, although of doubtful relevance, those relatively minor statements concerning gang affiliation in the testimony of Detective Monter could not have prejudiced defendant and were harmless error. *State v. Gumm,* 73 Ohio St.3d 413, 426, 653 N.E.2d 253, 266(1995).

*3. Flight*

**{¶47}** Dorsey complains that the prosecutor committed misconduct when he discussed Dorsey's fight to Georgia. He argues that the state failed to recognize that Dorsey was born in Georgia and gave the booking staff at the Stark County Jail a Georgia address.

**{¶48}** Flight is akin to "an admission by conduct which expresses consciousness of guilt." *United States v. Martinez*, 681 F.2d 1248, 1256(10th Cir. 1982), citing McCormick, Evidence (2nd Ed.1972) 655, Section 271. Thus, " ' "[i]t is today universally conceded that the fact of an accused's flight * * * [is] admissible as evidence of consciousness of guilt, and thus of guilt itself." ' " *State v. Williams* (1997), 79 Ohio St.3d 1, 11, 1997-Ohio-407, 679 N.E.2d 646, *quoting State v. Eaton*, 19 Ohio St.2d 145, 160,

249 N.E.2d 897(1969), *death penalty vacated* 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 750(1972).

**{¶49}** In the case at bar, the evidence supports the statements made by the prosecution. The state produced evidence that Dorsey left the jurisdiction following the crime. Accordingly, the prosecutor commented on the evidence before the jury and his actions were not in any manner improper. *State v. Bynes,* 6th Dist. Lucas No. L-07-1309, 2009-Ohio-5182, ¶38.

*4. Commenting on right not to testify and to remain silent.*

**{¶50}** Dorsey argues that the prosecutor improperly and prejudicially commenting on Dorsey's silence in closing argument.

**{¶51}** The first instance cited by Dorsey is as follows,

We heard from Thomas Whatley.  We heard from the witnesses who were here to testify.

1T. at 209.

**{¶52}** Dorsey next complains that the following argument constituted an impermissible comment upon his right to remain silent and to not testify,

And let's talk a little bit about Bird, the Defendant here. No one can say that Bird had the victim's stuff, his cash or his phone. Do you know why?

Well, pardon the pun, but Bird took off, flew away, flew the coop. Insert your own bad puns wherever you like them because he took off.

And you know what flight is, folks? Evidence of guilt. Because innocent people don't run away. Innocent people don't take off to Georgia or wherever it was the Marshals found him.

Do you know what our victim did? Our victim talked to the police. He talked to the Grand Jury. He talked to the Prosecutor, talked to a Judge, a Court Reporter and 14 jurors.

Guilty people flee. That's what they do; international sign. That's why we don't know whether he had Thomas's cell phone or his cash, a twenty-dollar bill or eight of them, no idea because he wasn't around. Was he in the back seat of that charcoal or gray or black car? Don't know. Was he beating feet north up that alley? No clue because he took off.

1T. at 226-227.

{¶53} A prosecutor is entitled to a certain degree of latitude in closing arguments. *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. *State v. Maurer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768(1984). A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge*, 75 Ohio St.3d 136, 141, 1996-Ohio-227, 661 N.E.2d 1019. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431(1974).

**{¶54}** The state may comment upon a defendant's failure to offer evidence in support of its case. *State v. Collins*, 89 Ohio St.3d 524, 733 N.E.2d 1118(2000). "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 528-29, 733 N.E.2d 1118. The state must refrain from commenting on a decision not to testify, but the state may challenge the weight of evidence offered by the defense in support of its theory of the case. Id. The state does not have a duty to disprove every possible circumstance suggested by the defendant. Id.

**{¶55}** "[T]he fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented upon." *State v. Petro*, 148 Ohio St. 473, 498, 162, 76 N.E.2d 355, 367(1948); *State v. Champion*, 109 Ohio St. 281, 289-290, 142 N.E. 141, 143-144(1924). *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 1993-Ohio-170, 616 N.E.2d 909,916(1993).

**{¶56}** In *State v. Clemons* the Ohio Supreme Court stated; "[t]he comment that the defense did not call an expert to testify that defendant "blacked out" during proceedings is not error. The comment that a witness other than the accused did not testify is not improper, *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. *State v. Williams* (1986), 23 Ohio St.3d 16, 19-20, 23 OBR 13, 16-17, 490 N.E.2d 906, 910-911; *State v. Bies* (1996), 74 Ohio St.3d 320, 326, 658 N.E.2d 754, 760." *Clemons, supra*, 82 Ohio St.3d 438, 452, 1998-Ohio-452, 692 N.E.2d 1009, 1022.

{¶57} In the case at bar, Dorsey mischaracterizes the prosecutor's statement. The prosecutor was commenting on the lack of evidence and not on the fact that Dorsey had not testified. Moreover, the trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments are not evidence. Further, the trial court instructed the jury that Dorsey had a constitutional right not to testify and the jury must not consider the fact that he did not testify for any purpose. We presume that the jury followed the court's instructions. *State v. Loza*, 71 Ohio St.3d 61, 79, 641 N.E.2d 1082(1994).

{¶58} We find that the language used by the prosecutor in this case is not such that the jury would "naturally and necessarily" take it as comment on the failure of the accused to testify, and thus fails the test set forth in *State v. Cooper*, 52 Ohio St.2d 163, 370 N.E.2d 725(1977), *vacated on other grounds*, 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157(1978). *State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906, 911(1986).

{¶59} For the foregoing reasons, Dorsey's second assignment of error is overruled.

III.

{¶60} In his third assignment of error, Dorsey argues the trial court erred in failing to give a curative instruction and failing to give a jury instruction on flight. Dorsey again takes issue with the prosecutor arguing that Dorsey's flight from Canton was indicative of guilt and stating that Dorsey and Whatley knew each other "from the institution" in opening and closing statements.

**{¶61}** "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St. 3d 206, 553 N.E.2d 640(1990), paragraph two of the syllabus.

**{¶62}** Rule 30 of the Ohio Rules of Criminal Procedure provides that a party must object to an omission in the court's instructions to the jury in order to preserve the error for appeal. "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Williford*, 49 Ohio St. 3d 247, 251-252, 551 N.E.2d 1279(1990). (Citations omitted). Where the trial court fails to give complete or correct jury instructions the error is preserved for appeal when defendant objects, whether or not there has been a proffer or written jury instruction offered by the defendant. (Id.). Even if an objection is not made in accordance with Rule 30 of the Ohio Rules of Criminal Procedure, or a written jury instruction is required to be offered by the defendant, Rule 52(B) of the Ohio Rules of Criminal Procedure, the so-called "plain-error doctrine" applies to the failure of the court to properly instruct the jury on "all matters of law necessary for the information of the jury in giving its verdict…" pursuant to Section 2945.11 of the Ohio Revised Code. *See, State v. Williford, supra*; *State v. Gideons*, 52 Ohio App. 2d 70, 368 N.E.2d 67(8th Dist. 1977).

**{¶63}** In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 25(1999), the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705(1967) applies to a

failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

**{¶64}** In the case at bar, Dorsey concedes that he did not object nor did he request orally or in writing the limiting instruction that he now contends should have been given by the trial court. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B).

**{¶65}** In criminal cases where an objection is not raised at the trial court level, "plain error" is governed by Crim. R. 52(B), which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error ... unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph two of the syllabus.

**{¶66}** "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 130 S.Ct. 2159, 176 L.Ed.2d 1012(2010)(internal quotation marks and citations omitted).

**{¶67}** The defendant bears the burden of demonstrating that a plain error affected his substantial rights.  *United States v. Olano*, 507 U.S. at 725,734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d

643(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *Perry, supra*, at 118, 802 N.E.2d at 646.

{¶68} It is well established that evidence of flight is admissible, as it tends to show consciousness of guilt. *Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 20 L.Ed.2d 917(1967). Further, a jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge. *See United States v. Dillon*, 870 F.2d 1125(6th Cir. 1989). The decision whether to issue a flight instruction rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Sims*, 13 Ohio App.3d 287, 289, 469 N.E.2d 554(1st Dist. 1984). Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140(1983).

{¶69} In the case at bar, Dorsey may well have not requested an instruction on flight because he argued to the jury that he did not flee; rather he simply returned to his home. We cannot say that the trial court committed plain error in failing to instruct the jury on flight, when neither party requested such an instruction, under the circumstances presented in the case at bar. It appears "beyond a reasonable doubt that the lack of a jury instruction on "flight" did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on

the whole record, that the constitutional error was harmless beyond a reasonable doubt").

**{¶70}** As we noted in our disposition of Dorsey's second assignment of error, although of doubtful relevance, the relatively minor references that Dorsey knew Whatley from "the institution" could not have prejudiced defendant and were harmless error. *State v. Gumm,* 73 Ohio St.3d 413, 426, 653 N.E.2d 253, 266(1995).

**{¶71}** Accordingly, Dorsey's third assignment of error is overruled.

IV.

**{¶72}** In his fourth assignment of error, Dorsey challenges the sufficiency of the evidence; he further contends his conviction is against the manifest weight of the evidence produced by the state at trial.

**{¶73}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶74}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio

St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶75} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶76}** In the case at bar, there is no dispute that Whatley was shot in the leg. There is further no dispute that a handgun was used to shoot Whatley. Dorsey argues that the evidence did not conclusively demonstrate who fired the gun.

**{¶77}** In the case at bar, Dorsey was charged with felonious assault pursuant to R.C. 2903.11,

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶78}** A "firearm" is defined under the code as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B).

**{¶79}** "Serious physical harm to persons" as defined in R.C. 2901.01(A)(5) means any of the following in pertinent part:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity.

**{¶80}** R.C. 2901.22 defines "knowingly" as follows:

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

**{¶81}** Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(1st Dist. 2001) (footnotes omitted). Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel*, 2nd Dist. Montgomery No. 16221, 1998 WL 214606 (May 1, 1998) (citing *State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412(10th Dist. 1995)).

**{¶82}** "A person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Carter*, 72 Ohio St.3d 545, 554, 651 N.E.2d 965 (1995). *See also State v. Robinson*, 161 Ohio St. 213, 118 N.E.2d 517 (1954), paragraph five of the syllabus. "'[A] firearm is an inherently dangerous instrumentality, the use of which is likely to produce death.'" *State v. Seiber*, 56 Ohio St.3d 4, 14, 564 N.E.2d 408 (1990), *quoting State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982).

{¶83} In *State v. Jester*, 32 Ohio St.3d 147, 152, 512 N.E.2d 962, 968(1987), the Ohio Supreme Court held:

> Where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill. *State v. Clark* (1978), 55 Ohio St.2d 257, 9 O.O.3d 257, 379 N.E.2d 597, syllabus; *State v. Johnson* (1978), 56 Ohio St.2d 35, 10 O.O.3d 78, 381 N.E.2d 637.

*Accord, State v. Widner*, 69 Ohio St.2d 267, 431 N.E.2d 1025(1982) (finding purpose to kill in passenger's firing gun at individual from moving vehicle); *State v. Dunlap,* 73 Ohio St.3d 308, 316, 652 N.E.2d 988(1995), certiorari denied (1996), 516 U.S. 1096, 116 S.Ct. 1096, 133 L.Ed.2d 765. *State v. Banks*, 10th Dist. No. 01 AP–1179, 2002–Ohio–3341 at ¶ 24.

> The trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's actions is to produce death. *State v. Robinson* (1954), 161 Ohio St. 213, 118 N.E.2d 517, paragraph five of the syllabus; *State v. Edwards* (1985), 26 Ohio App.3d 199, 200, 499 N.E.2d 352. Here, defendant looked at a group of individuals, pointed a semi-automatic handgun in their direction, and fired five shots. In so doing, one of the bullets fired from the handgun struck and killed his driver, Andre J. Bender. Although defendant claims the evidence equally supports a conclusion that he was merely trying to scare individuals in the group by

firing the handgun into the air, "[t]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Brown* (Feb. 29, 1996), Cuyahoga App. No. 68761, unreported. *Compare State v. Jester* (1987), 32 Ohio St.3d 147, 152, 512 N.E.2d 962 (when an inherently dangerous instrumentality is employed in the commission of a robbery, such evidence permits a jury to find a purposeful intent to kill).

*State v. Turner*, 10th Dist. No. 97APA05–709, 1997 WL 798770(Dec. 30, 1997), *quoting State v. Brown,* 8th Dist. No. 68761, 1996 WL 86627(Feb. 29, 1996) *dismissed, appeal not allowed,* 77 Ohio St.3d 1468, 673 N.E.2d 135.

**{¶84}** A review of the record shows the evidence presented was legally sufficient to support Dorsey's conviction, as there was evidence that Dorsey produced a gun and fired it at Whatley. Such evidence, if believed, was adequate to prove that Dorsey knowingly attempted to cause physical harm to Whatley with a deadly weapon.

**{¶85}** If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668(1997).* "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all

that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

**{¶86}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Dorsey committed the crime of felonious assault. We hold, therefore, that the state met its burden of production regarding each element of the felonious assault and, accordingly, there was sufficient evidence to support Dorsey's conviction.

**{¶87}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be

made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

**{¶88}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶89}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶90} Although Dorsey cross-examined the witnesses to show that someone else, including Whatley, may have had the handgun, the jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

{¶91} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Dorsey of the charge.

{¶92} Based upon the foregoing and the entire record in this matter, we find Dorsey's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the

credibility of the testimony of the state's witnesses and Dorsey's arguments. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Dorsey's guilt.

**{¶93}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime beyond a reasonable doubt.

**{¶94}** Dorsey's fourth assignment of error is overruled.

V.

**{¶95}** In his fifth assignment of error, Dorsey argues that he received ineffective assistance of counsel for the reasons set forth in his previous four assignments of error.

**{¶96}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶97}** Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are "so serious" that he no longer functions as "counsel," and prejudicial, meaning his errors deprive the defendant of a fair trial. *Maryland v. Kulbicki,* 577 U.S. __, 2015 WL 5774453(Oct. 5, 2015)(citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

{¶98} "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.' " *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136(1999), *quoting State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988). A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831. *Accord, State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233.

{¶99} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995–Ohio–171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id. "Poor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980)(*quoting United States v. Denno,* 313 F.2d 364 (2nd Cir.1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143.

{¶100} None of the instances raised by Dorsey rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Dorsey cites in support of his claim that he was denied effective assistance of counsel as previously noted in our disposition of Dorsey's first, second third and fourth assignments of error, we find Dorsey was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

{¶101} Dorsey's fifth assignment of error is overruled.

VI.

**{¶102}** In his sixth assignment of error, Dorsey contends that he was denied a fair trial due to cumulative errors by the trial court.

**{¶103}** In *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel*, 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶103.

**{¶104}** Here, Dorsey cites the doctrine of cumulative error, lists or incorporates the previous assignments of error, and gives no analysis or explanation as to why or how the errors have had a prejudicial cumulative effect. Thus, this assignment of error has no substance under *Bethel* and *Sapp*.

**{¶105}** Further, where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. Stark No.2002CA00125, 2003–Ohio-1313 at ¶37. To the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 89–90, 2004–Ohio–6235, 818 N.E.2d 229, 270 at ¶ 185.

**{¶106}** As this case does not involve multiple instances of error, Dorsey's sixth assignment of error is overruled.

{¶107} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.


By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE


_____
HON. PATRICIA A. DELANEY


WSG:clw 1027